**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HUDA SAAIDI,**

                    **Plaintiff ,**                    **1:08-cv-1096**
                                                       **(GLS/DRH)**

          **v.**

**CFAS, LLC,** individually and d/b/a **EDIFI**;
and **JOHN BRAAT,**

                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Akin, Smith Law Firm                DEREK T. SMITH, ESQ.
305 Broadway, Suite 1101            ISMAIL S. SEKENDIZ, ESQ.
New York, NY 10007

**FOR THE DEFENDANTS:**
Hodgson, Russ Law Firm              NOREEN D. GRIMMICK, ESQ.
677 Broadway, Suite 301
Albany, NY 12207-2884

**Gary L. Sharpe**
**District Court Judge**


## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Huda Saaidi commenced this action against defendants

CFAS, LLC, individually and doing business as EDIFI (EDIFI), and John Braat, alleging employment-related gender discrimination and unlawful retaliation under Title VII of the Civil Rights Act of 1964,[1] the New York State Human Rights Law (NYSHRL),[2] and the Administrative Code of the City of Albany.[3] (*See* Compl., Dkt. No. 1.)  Pending is defendants' motion to dismiss or, in the alternative, for summary judgment.  (Dkt. No. 25.)  For the reasons that follow, the motion to dismiss is denied, and the motion for summary judgment is granted in part and denied in part.

## II.  Background

EDIFI is a company "in the business of providing consulting services concerning college financial aid to families."  (*See* Grimmick Aff., Ex. F, Employment Agreement at 1, Dkt. No. 25:9.)  On February 26, 2006, EDIFI hired Huda Saaidi as a "sales counselor."  (*See* Defs. SMF ¶ 1, Dkt. No. 25:3.)  As a sales counselor, Saaidi would spend weekends in various locations throughout the United States selling EDIFI's services to college-bound students and their families.  (*See* Def. Mem. of Law at 1, Dkt. No.

---

[1]42 U.S.C. § 2000e, *et seq.*

[2]N.Y. Exec. Law §§ 290, *et seq.*

[3]Saaidi has agreed to withdraw her claims under the Administrative Code of the City of Albany.  (*See* Pl. Mem. of Law at 4, Dkt. No. 29.)  Accordingly, those claims are dismissed.

25:32.)  Under Saaidi's employment agreement, Saaidi was "paid a 'draw'
plus a commission based upon the number of sales [she made]."  (*See*
Defs. SMF ¶ 4, Dkt. No. 25:3.)

Saaidi alleges that soon after beginning her employment with EDIFI,
she was "subjected to numerous acts of sexual harassment and
discrimination based on her gender, creating a hostile work environment,
and unlawful retaliation."  (Compl. ¶ 22, Dkt. No. 1.)  Saaidi claims she was
first harassed by another EDIFI employee, Bradley Culkin, during a
February 2006 business trip.  (*See id.* at ¶ 23.)  According to Saaidi, "after
learning that [she] was hungry but afraid to leave the hotel at night by
herself," Culkin "lur[ed her] to his hotel room under the guise of having food
in his room," and told her "you are my kind of girl and you and me are going
to fuck one day."  (*Id.*)  Saaidi also claims that Culkin continued the
harassment during another business trip "some time in 2007," when "he
kissed [her] forehead" after she declined his offer "to join him and other
employees at the hotel pool for drinks."  (*Id.* at ¶ 24.)  According to Saaidi,
she responded to his advances by stating: "It is never going to happen.
You need to stop because this is making me uncomfortable."  (*Id.* at ¶ 25.)

Saaidi further alleges that two other EDIFI employees, John

3

Lockwood and Ryan Vaughn, also engaged in sexually harassing conduct. (*See id.* at ¶¶ 26-29.)  As to Lockwood, Saaidi claims that while on a business trip in March 2006, he "made sexual advances toward [her] by hugging and kissing [her]," and "asked [her] if she was cold and inappropriately put his arm around her."  (*Id.* at ¶¶ 26, 27.)  Saaidi also alleges that Lockwood "insisted on walking [her] to her hotel room after she mentioned she was tired," and, once there, "kissed her hand."  (*Id.* at 28.)  As to Vaughn, Saaidi contends that he touched her in a sexually inappropriate manner during a July 7, 2006 bus trip.  (*Id.* at ¶ 29.)  According to Saaidi, she, Lockwood, and Vaughn "were engaged in flirtatious behavior" when "Vaughn took it further by putting his hand around [Saaidi's] waist and squeezed her thigh in a sexually inappropriate manner."  (*Id.*; *see also* Pl. Mem. of Law at 1, Dkt. No. 29.)  As to Saaidi's participation in the "flirtatious behavior," defendants allege that Saaidi "sat on [Vaughn's] lap, placed her hands inside his pants, and started to kiss and lick his neck as the bus proceeded through a tunnel."  (*See* Def. SMF ¶ 17, Dkt. No. 25:3.)

On August 5, 2006, Saaidi verbally complained to her direct supervisor, Frank Merola, about Lockwood and Vaughn's behavior.  (*See*

4

Compl. ¶ 30, Dkt. No. 1.)  In an e-mail dated August 9, 2006, Merola relayed Saaidi's complaint to Stacey Connors, EDIFI's Human Resources representative.  (*See* Def. SMF ¶ 16, Dkt. No. 25:3.)  In addition, both Lockwood and Vaughn filed their own complaints against Saaidi, each alleging that Saaidi initiated contact with them and that they were sexually harassed by her.  (*See id.* at ¶¶ 17, 18.)

At some point after the complaints were filed, Saaidi requested that EDIFI alter her schedule so that she would not have to work with Lockwood or Vaughn, explaining that working with either would cause her "anxiety and stress."  (*See id.* at ¶ 22; Pl. Mem. of Law at 2, Dkt. No. 29.) According to Saaidi, however, EDIFI ignored her schedule request and purposefully scheduled her to work with Lockwood and Vaughn, allegedly "in retaliation for her complaint, and in an effort to further harass [her]." (*See* Pl. Counter SMF ¶ 23, Dkt. No. 29:6*;* Pl. Mem. of Law at 2, Dkt. No. 29.)

Based on Saaidi, Lockwood, and Vaughn's complaints, EDIFI undertook an investigation pursuant to its sexual harassment policy.  (*See id.* at ¶ 19.)  The investigation was conducted by John Braat, EDIFI Chief Operations Officer, and Maura Kastberg, EDIFI Vice President.  (*See id.* at

¶ 20.)  In September 2006, at the conclusion of the investigation, EDIFI "admonished all three parties, including [Saadi], for their conduct and warned them to comply with company policies regarding employee conduct and sexual harassment in the future."  (*Id.* ¶ 21.)

According to Saaidi, EDIFI's investigation was improperly handled. First, Saaidi claims that Braat and Kastberg "intimidated and coerced" her into "sign[ing] a false form containing lies that she ... instigated sexual harassment towards Lockwood and ... Vaughn."  (*See* Pl. Mem. of Law at 2, Dkt. No. 29.)  Second, Saaidi contends that she was "belittled and badgered for 'being in the wrong,'" and that she "was implicitly threatened with termination if she did not sign the statement."[4]  (*See id.*)  And third, Saaidi alleges that although "[she] identified a witness that could corroborate her statements and version of the incidents that were being investigated, ... [EDIFI] made no effort to interview [the] witness[]."  (*Id.*)

Saadi further alleges that EDIFI's unlawful treatment extended beyond Braat and Kastberg's investigation.  Specifically, Saaidi claims that beginning in August 2006, she "was treated in a disparate manner in

---

[4]While it is not clear from Saaidi's submission, it appears that the "false form" and "statement" refer to the form Saaidi signed in acknowledgment of receiving the September 2006 disciplinary notice.

retaliation for her having filed a sexual harassment complaint with her supervisor." (*Id.*)  She contends that EDIFI began "to deny [her] expense reports claims," "to overly criticize [her] work when there was no apparent reason for such criticism," and "to restrict [her] ability to attend various venues/events by not allowing [her] to fly out of Michigan airports."  (*Id.* at 3.)  Saaidi also claims that Merola would "proffer unsubstantiated conclusions regarding [her] demeanor or work ethic, such as consistently ask [her] why she wasn't enthusiastic or why she didn't like her job," and that he "would attend [her] presentations and stand or stare in a threatening manner in an effort to intimidate [her]."  (*Id.*)  In addition, Saaidi alleges that EDIFI improperly excluded her from attending various sales events on the basis of her low sales numbers, and that this exclusion resulted in a "significant" reduction in her earnings.  (*See id.*; Grimmick Aff., Ex. E, Pl. Dep. at 336-338, Dkt. No. 26:8.)  According to Saadi, while she was repeatedly told that she could not attend these events until her sales numbers improved, employees with lower sales figures were, without explanation, sent in her place.  (*See* Pl. Mem. of Law at 4, Dkt. No. 29.) Furthermore, Saaidi also claims that she complained to Merola of retaliatory conduct, but was told not to bring it up because "[Braat] would

see [her] as a troublemaker."  (*See id.* at 2.)

In March 2007, Saadi was granted an educational leave of absence from her employment with EDIFI.  (*See* Defs. SMF ¶¶ 24, 25, Dkt. No. 25:3.)  In August 2007, Saadi requested reinstatement with EDIFI and was rehired as a sales counselor soon thereafter.  (*See id.* at ¶ 26, 27.)  Then, on December 13, 2007, Saaidi filed a complaint with the Equal Opportunity Employment Commission (EEOC) and the New York State Division of Human Rights, alleging unlawful retaliation.  (*See id.* at ¶ 28.)  In her complaint, Saaidi claimed that as a result of her 2006 complaint of sexual harassment, she was "falsely accused of sexual harassment and other wrongdoing," and that "she was not being regularly scheduled for venues upon return from [her] leave of absence."  (Grimmick Aff., Ex. U, EEOC Compl. at 1, Dkt. No. 25:24.)  Saaidi also stated that "although [she] was scheduled for a venue on 10/20-21/2007, [she] was denied attendance at five sessions, severely limiting her sales potential," and that she "believe[d] that management [was] trying to force [her] to quit."  (*Id.*)

Saaidi alleges that similar retaliatory treatment persisted after the filing of her EEOC complaint.  Saaidi claims, for instance, that in March 2008, Merola continued to tell her that she would not be sent on sales

8

events until her numbers improved.  (*See* Pl. Mem. of Law at 4, Dkt. No. 29.)  In Saaidi's view, Merola's explanation in this regard was pretextual since "she could not get her 'numbers up' unless she attended [the sales events]."  (*See id.* at 3-4)

Ultimately, in April 2008, Saaidi left her employment with EDIFI and applied for unemployment benefits.  (*See* Defs. SMF ¶ 35, Dkt. No. 25:3; Compl. ¶ 45, Dkt. No.1.)  Then, on July 28, 2008, Saadi received a "right to sue" letter from the EEOC.  (*See* Grimmick Aff., Ex. BB, Right to Sue Letter, Dkt. No. 25:31.)  On October 14, 2008, Saaidi commenced this action against EDIFI and Braat, alleging claims of hostile work environment, constructive discharge, and unlawful retaliation, all under Title VII and the NYSHRL.  (*See* Compl., Dkt. No. 1.)  Defendants now move to dismiss Saaidi's complaint and for summary judgment.  (*See* Dkt. No. 25.)

### III.  <u>Standards of Review</u>

The standards for judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 are well established and will not be repeated here.  For a full discussion of the standards, the court refers the parties to its previous opinions in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d

215, 217-18 (N.D.N.Y. 2010) (Rule 12(b)(6)); and *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007) (Rule 56).  In the fact-intensive context of a discrimination action, "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001); *see also Gallo v. Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting summary judgment to an employer when ... its intent is at issue.").

## IV.  **Discussion**

### A.  **Motion to Dismiss**

Defendants first move to dismiss Saaidi's complaint pursuant to Rule 12(b)(6), arguing that Saaidi's "claim for relief is not plausible."  (*See* Defs. Mem of Law at 7-10, Dkt. No. 25:32.)  Having reviewed the complaint, the court disagrees and denies defendants' motion to dismiss.  However, because "individuals are not subject to liability under Title VII,"  *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) (citation omitted), the court dismisses sua sponte Saaidi's Title VII claims against Braat, *see Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004); *see*

*also, e.g.*, *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 390 (E.D.N.Y. 2009) (dismissing sua sponte Title VII claims against individual defendants).  The court now turns to defendants' motion for summary judgment on Saaidi's remaining claims.

**B.    Title VII Claims**

**1.    Exhaustion**

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citation omitted).  To be timely, an EEOC complaint must "be filed ... within 300 days of the alleged discriminatory act."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)).  This timeliness requirement operates "analogous to a statute of limitations."  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Thus, as a general rule, "only events that occurred during the 300-day period prior to filing ... are actionable under Title VII."  *Nowak v. EGW Home Care, Inc.*, 82 F. Supp. 2d 101, 106 (W.D.N.Y. 2000) (citing *Van Zant*, 80 F.3d at 712-713).

Notably, Title VII's limitations period does not operate to exclude

11

relevant evidence of discrimination.  Rather, a plaintiff may use prior acts "as background evidence in support of a timely claim."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 113, 113 (2002); *see, e.g.*, *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (explaining that "evidence of an earlier alleged retaliatory act may constitute relevant background evidence in support of [a] timely claim ... [and] may be considered to assess liability on the timely alleged act").

In addition to timeliness, the exhaustion requirements also mandate that the claims asserted in federal court be identical or "reasonably related" to those filed with the EEOC.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam).  Claims are "reasonably related" in three situations, two of which are relevant here.

The first situation is where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citations and internal quotation marks omitted).  In determining whether conduct would fall within the scope of the EEOC's investigation, "the focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about

12

which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (citations and

internal quotation marks omitted).  "The central question is whether the

complaint filed with the EEOC gave that agency adequate notice to

investigate discrimination on both bases." *Williams*, 458 F.3d at 70

(citation and internal quotation marks omitted).  Thus, "[s]pecific factual

allegations must be made in order for the EEOC to be able to investigate

them reasonably." *Szarka v. Reynolds Metals Co.*, 17 F. Supp. 2d 115,

124 (N.D.N.Y. 1998) (citation and internal quotation marks omitted).

The second situation where a claim is "reasonably related" is where

"a plaintiff alleges further incidents of discrimination carried out in precisely

the same manner alleged in the EEOC charge." *Butts v. City of New York*,

990 F.2d 1397, 1402-03 (2d Cir. 2005).  In *Dunbar v. County of Saratoga*,

for instance, Judge Munson explained that a plaintiff's claim for

constructive discharge was not barred by her failure to include it in her

EEOC complaint because it was "based upon, at least in part, allegations

that plaintiff was subjected to 'obscene, offensive, and degrading behavior,'

which fairly describe[d] the allegations contained in her EEOC complaint."

358 F. Supp. 2d 115, 129 (N.D.N.Y. 2005).  The same rationale applies for

conduct alleged to have occurred after the filing of the EEOC complaint.  In

*Almendral v. N.Y. State Office of Mental Health*, for example, the Second
Circuit held that the district court erred in refusing to consider conduct
postdating a plaintiff's EEOC complaint where that conduct was "essentially
the same as the earlier ... conduct contained in the ... complaint."  743 F.2d
963, 966 (2d Cir. 1984).

     Here, with little coherent explanation, EDIFI argues that each of
Saaidi's Title VII claims are barred for failure to exhaust administrative
remedies.  The court agrees as to Saaidi's hostile work environment claim,
but not as to her claims for retaliation and constructive discharge.

     Saaidi's hostile work environment claim is based on the alleged
sexually harassing conduct of Lockwood, Vaughn, and Culkin that occurred
in February, March, and July 2006.  (*See* Pl. Mem. of Law at 15, Dkt. No.
29.)  However, Saaidi's EEOC charge complains of neither a hostile work
environment, the sexually harassing behavior alleged to have occurred, or
of any sex-based discrimination.  Rather, the complaint alleges only that
Saaidi was retaliated against after filing a sexual harassment complaint in
August 2006, conduct wholly distinct in time and nature from that now
complained of.  Therefore, the court finds that Saaidi failed to afford the
EEOC adequate notice of the hostile work environment claim she now

14

asserts.  *See, e.g.*, *Hooda*, 659 F. Supp. 2d at 390 (explaining that claim is not reasonably related where it "differs significantly in time and nature" from the allegations presented to the EEOC); *Field v. Tonawanda City Sch. Dist.*, 604 F. Supp. 2d 544, 563-64 (W.D.N.Y. 2008) (same); *Wiley v. Citibank, NA*, No. 98 Civ. 1139  2000 WL 122148, *4 (S.D.N.Y. Feb. 1, 2000) (same).  Accordingly, Saaidi's claim for hostile work environment has not been exhausted and is therefore dismissed.

Saaidi's retaliation claim, on the other hand, survives EDIFI's exhaustion challenge.  EDIFI confusingly argues that this claim should be "dismissed as untimely since the sex harassment that [it] is allegedly based on was not timely complained of and is remote in time."  (*See* Defs. Reply at 2, Dkt. No. 33.)  This argument misses the mark.  Saaidi complained to the EEOC of unlawful retaliation on December 13, 2007.  Therefore, her claims of retaliation would have been timely filed as long as the retaliatory conduct alleged occurred no earlier than February 16, 2007, 300 days prior to the EEOC filing.  That requirement is clearly met here since the retaliatory conduct alleged in the EEOC complaint occurred on or after August 25, 2007.  Accordingly, EDIFI's argument in this regard is without merit.

Saaidi's constructive discharge claim also survives.  As noted above, claims not explicitly referenced in an EEOC complaint, even those that accrue after the filing of the complaint, are nonetheless viable where based on "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Butts*, 990 F.2d at 1402-03; *Almendral*, 743 F.2d at 966.  In this case, while Saaidi's EEOC complaint made no explicit reference to a constructive discharge, Saaidi did complain of what could reasonably be characterized as a pattern of retaliatory conduct aimed at forcing her resignation.  Saaidi's constructive discharge claim appears to rely largely on allegations of the same type of retaliatory practices—practices alleged to have continued after the filing of the EEOC complaint.  Given this similarity and the seeming continuous nature of the conduct, the court is not persuaded by the muddled arguments presented that Saaidi's claim for constructive discharge is not sufficiently related to her EEOC allegations.  Accordingly, to the extent that EDIFI challenges Saaidi's constructive discharge claim on exhaustion grounds, that argument is rejected at this juncture.

**2.    Retaliation**

EDIFI next argues that Saaidi has failed to establish a prima facie

16

case of retaliation.  To establish a prima facie case of retaliation, Saaidi

must show that "(1) [she] participated in a protected activity, (2) the

defendant knew of the protected activity; (3) [she] experienced an adverse

employment action; and (4) a causal connection exists between the

protected activity and the adverse employment action."  *Jackson v. N.Y.*

*City Transit*, No. 08-2021-cv, 2009 WL 3287558, at *2 (2d Cir. Oct. 14,

2009) (citation omitted).  The burden of making this showing is "minimal."

*See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

EDIFI argues that Saaidi did not engage in protected activity when

she complained of harassment in August 2006, and that she cannot show

that she suffered an adverse employment action.  EDIFI further agues that

even if Saaidi could establish those elements, she cannot show the

requisite causal connection.  These arguments are without merit.  Initially, it

is well settled that informal protests, such as Saaidi's complaint to

management, qualify as "protected activity."  *Sumner v. U.S. Postal Serv.*,

899 F.2d 203, 209 (2d Cir. 1990).

Further, the court is not persuaded that Saaidi cannot establish an

adverse employment action.  To establish an "adverse employment action,"

Saaidi must show "that a reasonable employee would have found the

17

challenged action materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (citation and internal quotation marks omitted).  In this case, Saaidi's direct supervisor allegedly limited Saaidi's access to certain sales venues and events upon her return from leave in August 2007, an allegation not directly refuted by EDIFI.[5]  The record indicates that Saaidi, like other sales counselors, relied heavily on such access to improve her sales percentages and increase her earnings and earning potential.[6]  In light of that reliance, the court finds that limiting Saaidi's access could be found by a jury to deter a reasonable worker from making or supporting a charge of discrimination.

And finally, the court is also satisfied that Saaidi has demonstrated a sufficient causal connection between her 2006 complaint and the alleged retaliatory conduct to survive summary judgment.  EDIFI's argument to the

---

[5]While EDIFI seems to imply in its statement of material facts that Saaidi's access to sales events was limited because of Saaidi's low sales numbers, it does not appear to dispute that her access was in fact limited.

[6]As described earlier, Saaidi "was ... paid a 'draw' plus ... commission based upon the number of sales." (*See* Defs. SMF ¶ 4, Dkt. No. 25:3.)  And, as EDIFI explained in its statement of material facts, "[i]t was a policy of EDIFI that the performance of sales counselors was measured by their [net sales]," and that "sales counselors with the lowest percentage of sales were given fewer assignments."  (*Id.* at ¶¶ 5, 6.)

contrary relies mainly on the wide temporal gap between the August 2006 complaint and the 2007 retaliatory conduct alleged.  However, Saaidi has alleged numerous instances of Merola engaging in retaliatory conduct throughout the year leading up to the conduct now at issue.[7]  Thus, while there may not be a close temporal proximity between the protected activity and the retaliatory action, Saaidi's allegations of prior misconduct provide at least some evidence that Merola harbored retaliatory animus toward Saaidi for filing her complaint, and thereby afford sufficient connection at this stage.  *See DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) ("Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment ... or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." (citations omitted)).  Accordingly, EDIFI's motion for summary judgment as to Saaidi's Title VII retaliation claim is denied.

**3.    Constructive Discharge**

EDIFI also challenges the sufficiency of Saaidi's constructive

---

[7]As noted above, while retaliatory conduct predating August 25, 2007, may not itself be actionable, evidence of that conduct is nonetheless available in assessing liability on a timely claim.  *See Morgan*, 536 U.S. at 113; *Jute*, 420 F.3d at176-77.

discharge claim.  "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily."  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003) (citation and internal quotation marks omitted).  For working conditions to be intolerable, they must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Id.* (citation and internal quotation marks omitted).

Here, EDIFI argues that Saaidi's allegations fail to establish that her working conditions were intolerable.  However, the court finds that the conditions alleged are sufficient to survive summary judgment.  As explained earlier, Saaidi's claim for constructive discharge appears to rely largely on allegations of retaliatory exclusion from certain sales venues and events.  Significantly, while hinting at justifications for its actions, EDIFI does not appear to dispute that it did indeed limit Saaidi's access to these venues and events, both before and after Saaidi's return in August 2007.  Therefore, because it is reasonable to infer that EDIFI's actions likely resulted in some loss of earnings, the court is unable to say as a matter of law that intolerable working conditions did not exist.  *See Kirsch v. Fleet*

20

*St., Ltd.*, 148 F.3d 149, 161-62 (recognizing that a reduction in an employee's compensation can amount to an intolerable working condition and constructive discharge).  Accordingly, EDIFI's motion as to Saaidi's constructive discharge claim is denied.

**C.   New York State Human Rights Law Claims**

As noted above, Saaidi has also asserted her claims for retaliation, constructive discharge, and hostile work environment under the NYSHRL. These claims are "analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (citation omitted); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("The identical standards apply to employment discrimination claims brought under Title VII ... [and] New York Executive Law § 296 ...." (citations omitted)).  Therefore, for the reasons already discussed, summary judgment is denied as to Saaidi's NYSHRL claims for retaliation and constructive discharge.  And for the reasons that follow, summary judgement is also denied as to Saaidi's remaining NYSHRL claim for hostile work environment.

In support of its motion, EDIFI argues that Saaidi has failed to establish a prima facie case of hostile work environment.  To establish a

prima facie case of hostile work environment, a plaintiff must show "(1) ... harassment [that] was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and internal quotation marks omitted)

Here, EDIFI argues that summary judgment is warranted as to Saaidi's hostile work environment claim because the harassment alleged is not "sufficiently severe or pervasive," and because EDIFI is nonetheless shielded from liability under the *Faragher/Ellerth* defense since "[it] undertook a reasonable investigation of [Saaidi's] [c]omplaints when they were made."  (*See* Defs. Mem. of Law at 16, Dkt. No. 25:32; (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).)  The court disagrees.

As to the harassment alleged, the court is satisfied that Saaidi's allegations, in light of all the circumstances, are minimally sufficient to survive summary judgment.  And because the court discerns questions of fact central to EDIFI's entitlement to the *Faragher/Ellerth* defense, including the reasonableness of EDIFI's investigation of Saaidi's complaints, it finds

that summary judgment is similarly unwarranted on *Faragher/Ellerth*

grounds.  *See Sassaman v. Gamache*, 566 F.3d 307, 314-315 (2d Cir.

2009) (explaining that a court may consider an employer's failure to

conduct an adequate investigation or to undertake an appropriate response

as evidence of discrimination or liability). Accordingly, EDIFI's motion as to

Saaidi's NYSHRL claim is denied.

### V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that EDIFI's motion to dismiss (Dkt. No. 25) is **DENIED**;

and it is further

**ORDERED** that Saaidi's Title VII claims against John Braat are

**DISMISSED**; and it is further

**ORDERED** that EDIFI's motion for summary judgment (Dkt. No. 25)

is **GRANTED** insofar as the claims brought under the Administrative Code

of the City of Albany are **DISMISSED**; and it is further

**ORDERED** that EDIFI's motion for summary judgment (Dkt. No. 25)

is **GRANTED** insofar as Saaidi's Title VII claims for hostile work

environment are **DISMISSED**; and it is further

**ORDERED** that EDIFI's motion for summary judgment (Dkt. No. 25 )

is otherwise **DENIED**; and it is further

　　　　**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 17, 2010
Albany, New York

United States District Court Judge